## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **RONDA DANNER**, on behalf of herself and all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**LEADING HEALTHCARE SOLUTIONS, INC.**,<br><br>*Defendant*. | Civil Case No.: 2:22-cv-11498<br><br>HON. STEPHEN J. MURPHY<br><br>**SECOND AMENDED COMPLAINT - CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1.     This action arises out of Defendant Leading Healthcare Solutions Inc.'s ("LHS") (collectively, "Defendants") relentless marketing practices that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120.[1]

2.     LHS makes, or has made on their behalf, aggressive telemarketing calls and text messages soliciting their insurance placement services.

3.     These text messages and calls are made to individuals on the National Do-Not-Call Registry.

4.     Defendant continues to make these calls and send text messages even after the called/texted party requests that Defendant STOP.

5.     The TCPA prohibits making telemarketing calls and text messages to a person who, like Ms. Danner, has previously asked not to receive such calls and texts, and makes sellers like LHS liable for calls in violation of the TCPA's internal do-not-call rules.

---

[1]  The amendment to the FTSA became effective on July 1, 2021.

6.     Accordingly, Ms. Danner brings this action on behalf of herself and classes of similarly situated individuals.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

8.     This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C.§ 1367(a), because they are so closely related to the federal claims that they form a single case or controversy.

9.     This Court has jurisdiction over LHS because LHS conducts business transactions in this District and LHS made calls into this District as part of the business it conducts in this District.

10.     Venue is proper in this District because Defendant targeted a resident of this District and called into this District and because some of the wrongful conduct giving rise to this case occurred in and/or was directed to this District.

## PARTIES

11.     Plaintiff Ronda Danner ("Ms. Danner") is, and at all times mentioned herein was, a citizen and resident of Westland, Michigan.

12.     Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

13.     Defendant LHS is, and at all times mentioned herein was, a Florida corporation with a principal address of 5420 NW 33rd Avenue 7, Fort Lauderdale, Florida 33309.

14.     Defendant LHS is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

2

## TCPA BACKGROUND

15.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and found that federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

16.     Relevant here, the TCPA establishes a national "do not call" database of numbers not to be called.  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

17.     These regulations are codified at 47 C.F.R. §§ 64.1200€(1-2).

18.     Specifically, a company may not initiate any "telephone solicitation" to a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2).

19.     A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

20.     The TCPA also specifically required the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

21.     The FCC was instructed to "compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section." *Id.* €(c)(1€), (E).

3

22.    Pursuant to this statutory mandate, the FCC established company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

23.    The FCC found that "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id.* at 8765, ¶ 23.

24.    However, recognizing that an honor system would probably be insufficient, the FCC found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

25.    These regulations are codified at 47 C.F.R. § 64.1200(d)(1)-(7).

26.    Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 C.F.R. § 64.1200(d) (1, 2, 3, 6).

27.    These policies and procedures prohibit a company from making calls for telemarketing purposes[2] unless they have implemented these policies and procedures. 47 C.F.R. §

---

[2]  The distinction between the use of "telephone solicitation" in relation to the national do-not-call database and calls for "telemarketing purposes" in relation to the company-specific do-not-call list is significant. "Telephone solicitation" excludes calls made to a person with whom the company has as established business relationship, 47 CFR 64.1200(f)(14), which can be established by a "voluntary two-way communication". 47 CFR 64.1200(f)(5). But this business relationship can be terminated by a "do not call" request. 47 CFR 64.1200(f)(5)(i). "Telemarketing purposes", on the other hand, includes any calls made for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 CFR 64.1200(f)(12). In other words, prior to making any telemarketing calls to anyone, regardless of relationship, a company must implement the company-specific do-

64.1200(d).

28.     Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.

29.     There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through § 227(c):

> Section 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013)

30.     These requirements are separate but cumulative.  In other words, a company must comply with both the procedures for the company specific do-not-call list *and* the procedures for complying with the national "do not call" database regulations.  A failure to comply with either is distinct a violation of 47 U.S.C. § 227(c).

31.     Though some of these requirements mention "residential" telephones, they were all extended to cover calls to cellular telephones that are used for residential purposes. 47 CFR. § 64.1200(e).

32.     Further, a person or entity can be liable for calls made on its behalf in violation of the TCPA, even if that person or entity did not directly dial such calls.  *See, e.g., In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining that the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate

---

not-call regulations, but it only need to comply with the national do-not-call registry provisions with respect to persons with whom it does not have an existing established business relationship.

responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6584 ¶28 (2013).

33.     Accordingly, an entity can be liable under the TCPA for a prohibited call made on its behalf under a number of theories including vicarious liability. Under those circumstances, the seller is properly deemed to have initiated the call through the person or entity that actually placed the call.

34.     Finally, text messages, such as the ones sent by LHS, are subject to the TCPA and its implementing regulations. *See* Fed. Commc'ns Comm., Enforcement Advisory No. 2016-06, DA 16-1299, *Robotext Consumer Protection: Text Message Senders Must Comply With the Telephone Consumer Protection Act* (Nov. 18, 2016).

## FACTUAL ALLEGATIONS

35.     Ms. Danner is the user of a cellular telephone number ending in 0800.

36.     Ms. Danner's cellular telephone number ending in 0800 is used for residential purposes and is not associated with a business.

37.     Ms. Danner's telephone number ending in 0800 has been on the National Do-Not-Call Registry since April 27, 2017.

38.     Ms. Danner personally placed her telephone number ending in 0800 on the National Do-Not-Call Registry.

39.     On March 1, 2022, Ms. Danner began receiving telephone calls and text messages

from the Defendant soliciting her to purchase health insurance.

### *Calls and Text Messages from LHS*

40.     LHS purchased Ms. Danner's telephone number as a lead.

41.     LHS began calling and texting Ms. Danner's telephone number on March 1, 2022 soliciting her to purchase health insurance.

42.     For example, on March 1, 2022 at approximately 9:37 AM, Ms. Danner received a telephone call from 734-274-6176.

43.     The caller asked for Jessica and stated the call was regarding an insurance quote from First Quote Health.

44.     Ms. Danner informed the caller that her name was not Jessica and that the caller had the wrong number.

45.     Ms. Danner also requested to be removed from the calling list.

46.     Three minutes later, at approximately 9:37 AM, Ms. Danner received another telephone call from 734-274-6176.

47.     The caller asked for Jessica and stated the call was regarding an insurance quote.

48.     Ms. Danner again informed the caller that her name was not Jessica and that the caller had the wrong number.

49.     Ms. Danner again requested to be removed from the calling list.

50.     At approximately 2:49pm, Ms. Danner received a call from 734-329-5149.

51.     Ms. Danner did not answer this call.

52.     One minute later, at approximately 2:50pm, Ms. Danner received another call from 734-329-5149.

53.     The caller asked for Jessica and stated the call was regarding an insurance quote.

54.     Ms. Danner again informed the caller that her name was not Jessica and that the caller had the wrong number.

55.     Ms. Danner again requested to be removed from the calling list.

56.     At approximately 3:08pm, Ms. Danner received a call from 734-280-6253.

57.     The caller asked for Jessica and stated the call was regarding an insurance quote.

58.     Ms. Danner again informed the caller that her name was not Jessica and that the caller had the wrong number.

59.     Ms. Danner again requested to be removed from the calling list.

60.     At approximately 3:47pm, Ms. Danner received another call from 734-280-6253.

61.     The caller asked for Jessica and stated the call was regarding an insurance quote.

62.     Ms. Danner again informed the caller that her name was not Jessica and that the caller had the wrong number.

63.     Ms. Danner again requested to be removed from the calling list.

64.     At approximately 4:31pm, Ms. Danner received another call from 734-280-6253.

65.     The caller asked for Jessica and stated the call was regarding an insurance quote.

66.     Ms. Danner again informed the caller that her name was not Jessica and that the caller had the wrong number.

67.     Ms. Danner again requested to be removed from the calling list.

68.     At approximately 5:02pm, Ms. Danner received another call from 734-280-6253.

69.     The caller asked for Jessica and stated the call was regarding an insurance quote.

70.     Ms. Danner again informed the caller that her name was not Jessica and that the caller had the wrong number.

71.     Ms. Danner again requested to be removed from the calling list.

72.     Ms. Danner received additional calls from 734-280-6253 at 5:29pm, 5:57pm, and 6:18pm.

73.     Ms. Danner received additional calls from 734-329-5149 at approximately 5:43pm, 5:48pm, 5:56pm, 6:03pm, 6:14pm, and 6:25pm.

74.     On March 1, 2022, LHS called Ms. Danner at least 17 times.

75.     LHS placed 16 of these calls after Ms. Danner informed LHS that it had the wrong number and after she requested to be placed on the Do-Not-Call list.

76.     On March 2, 2022 at approximately 9:12am, Ms. Danner received a call from 734-332-2278.

77.     The caller asked for Jessica and stated the call was regarding an insurance quote.

78.     Ms. Danner again informed the caller that her name was not Jessica and that the caller had the wrong number.

79.     Ms. Danner again requested to be removed from the calling list.

80.     Despite her request, LHS called Ms. Danner nine more times on March 2, 2022 at approximately 9:35am, 10:04am, 10:33am, 11:35am, 12:04pm, 12:33pm, 2:29pm, 3:59p and 4:33pm.

81.     On March 3, 2022, LHS called Ms. Danner at least 10 times.

82.     LHS called Ms. Danner from 734-280-6253 at approximately 10:00am, 12:08pm, 4:07pm, 6:54pm.

83.     LHS called Ms. Danner from 734-332-2253 at approximately 9:52pm, 11:22am, 12:52pm, 2:32pm, 4:03pm, 5:33pm.

84.     On March 4, 2022, LHS called Ms. Danner at least 7 times.

85.     LHS called Ms. Danner from 734-280-6253 at approximately 9:49am, 11:48am,

1:14pm, 4:00pm.

86.     LHS called Ms. Danner from 734-332-5138 at approximately 10:57am, 1:46pm, and 3:26pm.

87.     On Sunday, March 6, 2022, LHS called Ms. Danner at least two times.

88.     LHS called Ms. Danner from 734-280-6253 at approximately 10:31am and 12:47pm.

89.     On March 7, 2022, LHS called Ms. Danner at least 5 times.

90.     LHS called Ms. Danner from 734-280-6253 at approximately 3:40pm.

91.     LHS called Ms. Danner from 734-890-5138 at approximately 11:21am, 12:51pm, 2:38pm and 4:39pm.

92.     On March 8, 2022, LHS called Ms. Danner at least 7 times.

93.     LHS called Ms. Danner from 734-280-6253 at approximately 12:22pm and 5:11pm.

94.     LHS called Ms. Danner from 734-332-2261 at approximately 10:17am, 144pm and 3:45pm.

95.     During the call that occurred at 10:17am, Ms. Danner again informed LHS that it was calling the wrong number and she requested to be removed from the calling list.

96.     LHS called Ms. Danner from 734-205-9034 at approximately 4:33pm and 7:42pm.

97.     On March 9, 2022, LHS called Ms. Danner at least 5 times.

98.     LHS called Ms. Danner from 734-332-2276 at approximately 10:11am, 12:12pm, 2:51pm and 452pm.

99.     During the call that occurred at 10:11am, Ms. Danner again informed LHS that it was calling the wrong number and she requested to be removed from LHS's calling list.

100.   LHS called Ms. Danner from 734-205-9034 at approximately 8:29pm.

101.   On March 10, 2022, LHS called Ms. Danner at least 5 times.

102.   LHS called Ms. Danner from 734-205-9034 at approximately 9:25am.

103.   LHS called Ms. Danner from 734-332-2292 at approximately 10:11am, 12:12pm, 2:56pm and 4:56pm.

104.   During the call that occurred at 12:12pm, Ms. Danner again informed LHS that it was calling the wrong number and she requested to be removed from the calling list.

105.   On March 11, 2022, LHS called Ms. Danner at least 7 times.

106.   LHS called Ms. Danner from 734-205-9034 at approximately 9:40am, 12:48pm and 3:52pm.

107.   LHS called Ms. Danner from 734-280-6253 at approximately 3:53pm.

108.   LHS called Ms. Danner from 734-349-3086 at approximately 10:22am, 1:45pm and 3:49pm.

109.   During the call that occurred at 10:22am, Ms. Danner again informed LHS that it was calling the wrong number and she requested to be removed from the calling list.

110.   On March 13, 2022, LHS called Ms. Danner at least one time from 734-280-6253 at approximately 1:21pm.

111.   On March 14, 2022, LHS called Ms. Danner at least 3 times.

112.   LHS called Ms. Danner from 734-280-6253 at approximately 12:22pm and 1:45pm.

113.   LHS called Ms. Danner from 734-205-9034 at approximately 2:42pm.

114.   During the call that occurred at 2:42pm, Ms. Danner again informed LHS that it was calling the wrong number and she requested to be removed from the calling list.

11

115.    On March 15, 2022, at approximately 1:23pm, LHS sent Ms. Danner the following text message:



116.    On March 16, 2022, LHS called Ms. Danner at least 3 times.

117.    LHS called Ms. Danner from 734-767-0681 at approximately 11:31am, 2:11pm and 4:45pm.

118.    During the call that occurred at 11:31am, Ms. Danner again informed LHS that it was calling the wrong number and she requested to be removed from LHS's calling list

119.    On March 17, 2022, LHS called Ms. Danner at least 3 times.

120.    LHS called Ms. Danner from 734-767-0681 at approximately 12:07pm and 2:57pm.

121.    LHS called Ms. Danner from 734-280-6253 at approximately 1:38pm.

122.    On March 18, 2022, LHS called Ms. Danner at least 2 times.

123.    LHS called Ms. Danner from 734-280-6253 at approximately 1:33pm.

124.    LHS called Ms. Danner from 734-332-2278 at approximately 2:08pm.

125.    During the call that occurred at 2:08pm, Ms. Danner again informed LHS that it

was calling the wrong number and she requested to be removed from the calling list.

126.    On March 23, 2022, LHS called Ms. Danner at least 2 times.

127.    LHS called Ms. Danner from 734-280-6253 at approximately 4:49pm.

128.    LHS called Ms. Danner from 734-332-2198 at approximately 2:32pm.

129.    On March 24, 2022, LHS called Ms. Danner at least 2 times.

130.    LHS called Ms. Danner from 734-472-2792 at approximately 11:03am and 2:30pm.

131.    During the call that occurred at 11:03am, Ms. Danner again informed LHS that it was calling the wrong number and she requested to be removed from LHS's calling list.

132.    On March 31, 2022, LHS called Ms. Danner at least one time.

133.    LHS called Ms. Danner from 734-280-6253 at approximately 6:18pm.

134.    On April 5, 2022, LHS called Ms. Danner at least two times.

135.    LHS called Ms. Danner from 734-332-2591 at approximately 12:58pm and 4:56pm.

136.    During the call that occurred at 4:56pm, Ms. Danner again informed LHS that it was calling the wrong number and she requested to be removed from LHS's calling list.

137.    These calls made reference to First Quote Health.

138.    Ms. Danner did not provide prior express invitation or permission or consent for these telephone calls or text messages.  To the contrary, in response to the unwanted calls and texts, Ms. Danner repeatedly requested that LHS cease calling her.

139.    LHS or those otherwise making calls on LHS's behalf, did not have written do-not-call policies or procedures at the time of the calls or texts to Ms. Danner and the classes defined below.

140.    Alternatively, whatever written policies existed either failed to comply with the

13

minimum requirements under the TCPA, 47 C.F.R. § 64.1200(d), or were never properly implemented—including as evidenced by the continued telephone calls to Ms. Danner after she directly asked not to be contacted.

141.   LHS's violations were negligent.

142.   Alternatively, LHS's violations were willful and knowing.

143.   Ms. Danner and the classes were damaged by the violations alleged herein.  Their privacy was improperly invaded, the Defendant's calls and texts temporarily seized and trespassed upon the use of their phones, and/or they were forced to divert attention away from other activities to address the unwanted telephone calls.  Defendant's telephone calls and text messages were annoying and a nuisance, and wasted the time of Ms. Danner and the class members.  *See, e.g., Mims,* 565 U.S. at 372 (discussing congressional findings of consumer "outrage" as to prerecorded calls).

## **DEFENDANT'S LIABILITY**

144.   Defendant uses automated systems to make outbound telephonic sales calls and send text messages to hundreds if not thousands of consumers across the U.S., including to consumers whose phone numbers are listed on the National Do-Not Call Registry.

145.   Defendant made two or more telephone solicitations to Ms. Danner, whose number was on the National Do-Not-Call Registry at the time of the telephone calls. This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

146.   Accordingly, for violations of 47 C.F.R. § 64.1200(c), Ms. Danner is entitled to $500 per call through 47 U.S.C. § 227(c).

147.   Ms. Danner is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

14

148.    Defendant placed two or more telemarketing calls to Ms. Danner, despite not having in place the required policies and procedures prior to making such calls.  This constitutes a violation of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.6200(d).

149.    Accordingly, for violations of 47 C.F.R. § 64.1200(d), Ms. Danner is entitled to $500 per call through 47 U.S.C. § 227(c).

150.    Ms. Danner is entitled to $1,500 per call if Defendant's actions are found to be knowing or willful.

151.    Defendant also violated the FTSA.

152.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

153.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes."  Fla. Stat. § 501.059(1)(i).

154.    Defendant LHS failed to secure prior express written consent from Ms. Danner and the Class Members.

155.    In violation of the FTSA, LHS made and/or knowingly allowed telephonic sales calls to be made to Ms. Danner and the Class Members without their prior express written consent.

156.    LHS made and/or knowingly allowed the telephonic sales calls to Ms. Danner and the Class members to be made utilizing an automated system for the selection or dialing of

telephone numbers.

157.     As a result of LHS's conduct, and pursuant to § 501.059(10)(a) off the FTSA, Ms.

Danner and the Class Members were harmed and are each entitled to a minimum of $500.00 in

damages for each violation.

## CLASS ACTION ALLEGATIONS

158.     Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of three proposed

"Classes," as defined as follows:

### THE TCPA CLASSES

Since June 28, 2018, Plaintiff and all persons within the United States to whose
telephone number Defendants placed (or had placed on their behalf) two or more
telemarketing calls in a 12-month period when the residential telephone number to
which the telephone calls were made was on the National Do-Not-Call Registry for
more than 30 days at the time of the calls.

("Registry Class")

Since June 28, 2018, Plaintiff and all persons within the United States whose
residential telephone number Defendants placed (or had placed on their behalf) two
or more telemarketing calls in a 12-month period, including at least one after the
person requested that the calls or messages stop.

("Policy Class")

### THE FLORIDA CLASSES

Since July 1, 2021, Plaintiff and all persons in the United States who (1) received
a text message from, or on behalf of, LHS, (2) using the same equipment or type of
equipment utilized to call or send a text message to Plaintiff.

("Autodial Class")

(The TCPA Classes and the Florida Classes are collectively referred to herein as the "Classes.")

159.     Excluded from the Classes are Defendant and any entities in which Defendant has

a controlling interest; Defendant's agents and employees; any Judge and Magistrate Judge to

16

whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

160.    The Members of the Classes for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

161.    The exact number and identities of the persons who fit within the Classes are ascertainable in that Defendant and third parties maintain written and electronically stored data showing:

   a.   The time period(s) during which Defendant made their telephone calls and sent their text messages;

   b.   The telephone numbers to which Defendant made telephone calls and sent text messages;

   c.   The telephone numbers for which Defendant had prior express written consent;

   d.   The purposes of such telephone calls and text messages; and

   e.   The names and addresses of Class members.

162.    The Classes are comprised of hundreds, if not thousands, of individuals.

163.    There are common questions of law and fact affecting the rights of the Members of the Classes, including, *inter alia*, the following:

   a.   Whether Defendant (or someone acting on their behalf) make telemarketing calls and send telemarketing text messages;

   b.   Whether Defendant (or someone acting on their behalf) obtains prior express written consent;

17

    c.   Whether Defendant or the entities with which they contract makes solicitation calls and send text messages to telephone numbers registered on the National Do-Not-Call Registry;

    d.   Whether Defendant had the required policies and procedures prior to making telemarketing calls;

    e.   Whether Defendant's statutory violations were willful and knowing; and

    f.   Whether Defendant should be enjoined from engaging in such conduct in the future.

164.    Plaintiff is a member of the Classes in that Defendant placed two or more calls and text messages for telemarketing purposes, in a one-year period to her telephone number, without her prior express written consent, after she asked Defendant to stop, and while her telephone number was on the National Do-Not-Call Registry.

165.    Plaintiff's claims are typical of the claims of the Members of the Classes in that they arise from Defendant's uniform conduct and are based on the same legal theories as these claims.

166.    Plaintiff and all putative Members of the Classes have also necessarily suffered concrete harm in addition to statutory damages, as all Members of the Classes spent time tending to Defendant's unwanted calls and suffered a nuisance and an invasion of their privacy.

167.    Plaintiff has no interests antagonistic to, or in conflict with, the Classes.

168.    Plaintiff will thoroughly and adequately protect the interests of the Classes, having retained qualified and competent legal counsel to represent her and the Classes.

169.    Defendant has acted and refused to act on grounds generally applicable to the Classes, thereby making injunctive and declaratory relief appropriate for the Classes.

170.     The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

171.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

172.     Common questions will predominate, and there will be no unusual manageability issues.

**FIRST CAUSE OF ACTION**
**Violations of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the TCPA 227(c) Class)**

173.     Plaintiff and the proposed Registry Class incorporate the allegations of paragraphs 1-172 as if fully set forth herein.

174.     Defendant made, or had made on their behalf, telephone solicitations to Plaintiff's and putative Registry Class Members' telephone numbers.

175.     Plaintiff's and putative Registry Class Members' telephone numbers were all on the National Do-Not-Call Registry at the time of the calls.

176.     Plaintiff and putative Registry Class Members each received two or more such calls in a 12-month period.

177.     Plaintiff and putative Registry Class Members are entitled to an award of $500 in statutory damages for each telephone solicitation call pursuant to 47 U.S.C. § 227(c)(5).

178.     Plaintiff and putative Registry Class Members are entitled to an award of treble damages in an amount up to $1,500 for each telephone solicitation call made knowingly and/or willfully, pursuant to 47 U.S.C. § 227(c)(5).

## SECOND CAUSE OF ACTION
## Violations of the TCPA, 47 U.S.C. § 227(c)
## (On behalf of Plaintiff and the Policy Class)

179.    Plaintiff and the proposed Policy Class incorporate the allegations of paragraphs 1-172 as if fully set forth herein.

180.    Defendant made numerous telephone calls and sent numerous text messages for telemarketing purposes to Plaintiff's and putative Policy Class Members' telephone numbers.

181.    Defendant did so despite not having a written policy pertaining to "do not call" requests.

182.    Defendant did so despite not having such a policy available "upon demand."

183.    Defendant did so despite not training their personnel on the existence or use of any internal "do not call" list or policy.

184.    Defendant did so despite not recording or honoring "do not call" requests.

185.    Defendant made two or more telemarketing calls and/or sent two or more telemarketing text messages to Plaintiff and putative Policy Class Members' telephone numbers in a 12-month period.

186.    Plaintiff and putative Policy Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

187.    Plaintiff and putative Policy Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5).

**THIRD CAUSE OF ACTION**
**Violation of the Florida Telephone Solicitation Act, Fla. Stat. § 501.059**
**(On behalf of Plaintiff and the Autodial Class)**

188.    Plaintiff and the proposed Autodial Class incorporate the allegations of paragraph 1-172 as if fully set forth herein.

189.    Plaintiff brings this claim individually and on behalf of the Autodial Class Members against Defendant.

190.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

191.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

192.    LHS failed to secure prior express written consent from Plaintiff and the Class Members.

193.    In violation of the FTSA, LHS made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

194.    LHS made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers.

21

195.    As a result of LHS's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

A.    An order certifying the Classes as defined above, appointing Plaintiff as the representatives of the Classes and appointing their counsel as Class Counsel;

B.    An order declaring that Defendant's actions, as set out above, violate the statutes referenced herein;

C.    An award of injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.    An award of statutory damages;

E.    An award of treble damages; and

F.    Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

**Dated:** August 15, 2023

s/ *Avi R. Kaufman*
Avi R. Kaufman, Esquire
KAUFMAN P.A.
237 South Dixie Highway, 4th Floor
Coral Gables, Florida 33133
Tel: (305) 469-5881
kaufman@kaufmanpa.com

s/ *Max S. Morgan*
Max S. Morgan, Esquire
Eric H. Weitz, Esquire
**THE WEITZ FIRM, LLC**
1528 Walnut Street, 4th Floor
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com